NOT FOR PUBLICATION

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------x
                                  :

In re:                                 :        Chapter 7

W. Wesley Drummon,        :        Case No. 19-10670 (JLG)

        Debtor.                  :
----------------------------------------------------------------x
                                :

The City of Atlantic City,       :

        Plaintiff,             :        Adv. Pro. No. 19-01211 (JLG)

v.                                   :

W. Wesley Drummon,        :

        Defendant.          :
----------------------------------------------------------------x

**MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION**
<u>**FOR JUDGMENT ON THE PLEADINGS**</u>

**APPEARANCES:**

LILES PARKER
*Counsel to Defendant Wesley Drummon*
2305 Calvert Street NW
Washington, District of Columbia 20008
By:    John P. Pierce (*pro hac vice*)

TRENK ISABEL SIDDIQI & SHAHDANIAN P.C.
*Counsel to Plaintiff City of Atlantic City*
290 W. Mt. Pleasant Ave, Suite 2350
Livingston, New Jersey 07039
-and-
80 Pine Street, 10th Floor
New York, New York 10005
By:    Richard D. Trenk (*pro hac vice*)
        Robert S. Roglieri (*pro hac vice*)

**HON. JAMES L. GARRITY, JR.**
**U.S. BANKRUPTCY JUDGE**

### Introduction

W. Wesley Drummon ("Drummon") is a chapter 7 debtor herein. In this adversary proceeding, the City of Atlantic City (the "City") demands judgment against Drummon (i) determining that all debts owed by Drummon to the City are nondischargeable; (ii) awarding the City attorneys' fees and costs incurred in this action; and (iii) granting the City such other and further relief as this Court deems just and equitable. The City's claims against Drummon relate to two agreements from the summer of 2013 between the City and Zemurray Street Capital LLC ("Zemurray"), a company in which Drummon indirectly held an ownership interest, and for which Drummon served as Managing Partner. The agreements relate to providing lending services to eligible applicants from the City: a Memorandum of Understanding dated May 31, 2013 (the "MOU"), and an Escrow Agreement dated July 25, 2013. The City alleges that Drummon defrauded it with respect to these two agreements.

The City's complaint in support of this adversary proceeding (the "Complaint")[1] includes five counts of relief. In Counts One, Two, and Three, the City seeks an order denying the discharge of Drummon's debts to the City under sections 523(a)(2), (a)(4), and (a)(6) of the Bankruptcy Code, respectively. In Counts Four and Five of the Complaint, the City seeks an order denying Drummon his discharge in bankruptcy pursuant to sections 727(a)(4)(A) and (a)(4)(B) of the Bankruptcy Code, respectively. On November 30, 2023, the Court granted the Debtor's motion

---

[1] *See Adversary Complaint Objecting to Discharge Pursuant to 11 U.S.C. §727 and Dichargability* [sic] *of Debts Pursuant to 11 U.S.C. §523* ("Complaint"), AP ECF No. 1. Citations to "AP ECF No. _" refer to documents filed on the electronic docket of this adversary proceeding, *City of Atlantic City v. Drummon*, No. 19-01211. Citations to "ECF No. _" refer to documents filed on the electronic docket of the main case, *In re W. Wesley Drummon*, ECF No. 19-10670.

2

for summary judgment dismissing Counts One, Two and Three of the Complaint. In so ruling, the Court denied the City's cross-motion for summary judgment against Drummon on those Counts.

The matter before the Court is Drummon's motion pursuant to Rule 12(c) of the Federal Rules of Civil Procedure[2] and Bankruptcy Rule 7012(b) for judgment on the pleadings dismissing Counts Four and Five of the Complaint (the "Motion").[3] The City opposes the Motion (the "Opposition").[4] The Court conducted a hearing on the Motion (the "Hearing").

For the reasons set forth herein, the Court grants the Motion.

## Jurisdiction

This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 1334(b) and 157(a) and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United States District Court for the Southern District of New York (M-431), dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I) and (J).

---

[2] Rule 12(c) is made applicable herein by Rule 7012 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

[3] *Defendant Drummon's Notice of Motion and Motion for Judgment on the Pleadings as to Causes of Action Four and Five*, AP ECF No. 114.

[4] *Plaintiff's Memorandum of Law in Opposition to Defendant Drummon's Motion and Motion for Judgment on the Pleadings as to Causes of Action Four and Five*, AP ECF No. 116.

## Background

**The Prepetition District Court Action**

On or about July 15, 2014, the City filed a complaint in the Superior Court of New Jersey against Drummon, Zemurray and others. Trenk Certification ¶ 3.[5] In it, the City asserted claims against the defendants for breach of contract, breach of the implied covenant of good faith and fair dealing, fraud, conversion, fraudulent transfer, and fraudulent concealment. On August 19, 2014, that action was removed to the United States District Court for the District of New Jersey (the "District Court Action"). *Id.*[6] On April 3, 2017, the City filed a motion for summary judgment against the defendants, including Zemurray and Drummon. *See* Trenk Certification, Ex. B.[7] On December 29, 2017, the District Court granted the City summary judgment on the breach of contract count against Zemurray, but denied it against Drummon, and denied the City's motion on all other counts against both Drummon and Zemurray. *See City of Atl. City v. Zemurray Street Cap., LLC*, No. 14-5169, 2017 WL 6638203, at *1 (D.N.J. Dec. 29, 2017) (the "District Court Order"). On March 7, 2019, the District Court entered a Consent Judgment against Zemurray in the sum of $3,000,000.[8]

**Drummon Commences the Chapter 7 Case**

On March 1, 2019 (the "Petition Date"), while the City's motion for summary judgment was pending in the District Court Action, Drummon filed a voluntary petition for relief under

---

[5] *Certification of Richard D. Trenk, Esq. in Support of the City's Motion for an Adverse Inference Against Defendant W. Wesley Drummon*, AP ECF 89.

[6] *See City of Atl. City v. Zemurray St. Cap., LLC*, Civil No. 14-5169 (D.N.J. filed Aug. 19, 2014).

[7] A copy of all certifications submitted in connection with the summary judgment motion in the District Court Action, and fully sets forth the background facts in this matter, is annexed to the Trenk Certification.

[8] *Consent Judgment Against Defendant Zemurray Street Capital, LLC Only in Favor of Plaintiff the City of Atlantic City*. *See* Trenk Certification Ex. F.

4

chapter 7 of title 11 of the United States Code (the "Bankruptcy Code") in this Court (the "Petition").[9]  With the Petition, Drummon filed his Schedule A/B and Schedule C forms (the "Schedules").[10]  Part 4 of "Schedule A/B: Property" directs the debtor to "Describe Your Financial Assets."  Schedules at 11.  Paragraph 19 directs the debtor to identify "Non-publicly traded stock and interests in incorporated and unincorporated businesses, including an interest in an LLC, partnership, and joint venture."  *Id.* at 12.

In responding to Paragraph 19, Drummon identified (i) Zemmuary [sic] Street Capital LLC, (ii) Capital Street Finance LLC, and (iii) Banc Partners LLC.  *Id.*  He described Zemurray as a "Financial entity co-owend [sic] with 9 other partners."  *Id.*  He valued his interest in each of those entities as "$0.00."  *Id.*  However, the information in Paragraph 19 is wrong. Drummon does not hold a direct interest in Zemurray.  Rather, Drummon holds a 50% interest in Taipan Holdings, LLC ("Taipan"), which in turn holds a 50% interest in Zemurray.  Drummon values his interest in Taipan as "$0.00."  He did not list his interest in Taipan anywhere in the Schedules.

**The City Commences the Adversary Proceeding**

On June 3, 2019, the City filed the Complaint commencing this adversary proceeding.  As relevant to the Motion, in Counts Four and Five of the Complaint, the City seeks judgments denying Drummon a discharge in bankruptcy under sections 727(a)(4)(A) and (B) of the Bankruptcy Code, respectively.  *Id.* ¶¶ 123–27.

In support of Count Four, the City alleges that "the Debtor made a false oath and failed to properly disclose his assets, income and transfers to insiders in engaging in the acts noted above

---

[9] *Chapter 7 Voluntary Petition for Individuals*, ECF No. 1.

[10]  The Schedules are annexed to the Petition at pages 10–33 (pdf pagination) of the Petition.  When citing to the Schedules, the Court will refer to the pdf pagination.

5

and in failing to disclose substantial interests and assets of the estate, the Debtor knowingly and fraudulently, in or in connection with the case, made a false oath or account." Complaint ¶ 125. Specifically, the City alleges that "the Debtor failed to list his ownership interest in Taipan." *Id.* ¶ 126. In support of Count Five, the City asserts that "[i]n engaging in the acts noted above and in failing to disclose substantial interests and assets of the estate, the Debtor knowingly and fraudulently, in or in connection with the case, presented or used a false claim." *Id.* ¶ 129. The City asserts that, as a consequence of Drummon's alleged failure "to disclose substantial interests and assets of the estate," the Court should deny the Debtor a discharge in bankruptcy pursuant to sections 727(a)(4)(A) and 727(a)(4)(B). *Id.* ¶¶ 127, 130.

**Drummon Amends His Bankruptcy Schedules**

On July 9, 2019, after the City served and filed the Complaint, Drummon filed amended schedules in his chapter 7 case (the "Amended Schedules").[11] As relevant, in Schedule A/B, he amended his response in Paragraph 19 to omit the reference to Zemurray, and to include "Taipan Holdings, LLC," along with Capital Street Finance LLC and Banc Partners LLC, as entities in which he held an interest. He valued his interests in those entities at "$0.00." Amended Schedules at 3.

**Drummon Files an Answer to the Complaint**

On September 3, 2019, Drummon filed his answer to the Complaint (the "Answer").[12] In response to the City's allegation in support of Count Four that "the Debtor failed to list his ownership interest in Taipan," Complaint ¶ 126, Drummon states:

---

[11] *Amended Schedule A/B—Individual, Schedule C—Individual*, ECF No. 32.

[12] *Debtor W. Wesley Drummon's Answer and Affirmative Defenses to Adversarial Complaint*, AP ECF No. 10.

> Admitted that Debtor initially omitted his ownership interest in Taipan Holdings, LLC because Debtor was forced to file his petition hurriedly. Debtor has since amended his petition to include his ownership interest in Taipan Holdings, LLC.

Answer ¶ 126. In responding to the allegations in support of Count Five, Drummon "repeats and reallges [sic] the contents of all previous paragraphs as if set forth at length herein", Answer ¶ 128, and denies the allegations in paragraphs 129 and 130 of the Complaint. Answer ¶¶ 129, 130.

**Cross-Motions for Summary Judgment on Counts One, Two and Three**

On August 30, 2022, Drummon filed an amended motion to dismiss the adversary proceeding pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.[13] By order dated October 5, 2022, the Court converted that motion into a motion for summary judgment.[14] On November 9, 2022, Drummon filed his motion for summary judgment dismissing Counts One, Two, and Three of the Complaint ("Drummon SJ Motion").[15] On November 23, 2022, the City objected to the Drummon SJ Motion and filed a cross-motion seeking judgments under Counts One, Two, and Three of the Complaint ("City SJ Motion").[16] In November 2023, the Court granted the Drummon SJ Motion and denied the City SJ Motion.[17] That order is on appeal in the district court.

---

[13] *Defendant Drummon's Amended Motion to Dismiss Pursuant to Rule 12(c)*, AP ECF No. 92.

[14] *Minute Order*, AP ECF No. 98.

[15] *Defendant Drummon's Motion for Summary Judgment*, AP ECF No. 100; *Defendant Drummon's Memorandum of Points and Authorities in Support of His Motion for Summary Judgment*, AP ECF No. 101; *Defendant Drummon's Statement of Facts in Support of His Motion for Summary Judgment*, AP ECF No. 102.

[16] *Cross-Motion of the City of Atlantic City for Summary Judgment Pursuant to FRCP 56, Incorporated into the Federal Rules of Bankruptcy Procedure by FRBP 7056, and Local Civil Rule 7056-1*, AP ECF No. 105; *The City of Atlantic City's Memorandum of Law in Opposition to Defendant Drummon's Motion for Summary Judgment and in Support of the City's Cross-Motion for Summary Judgment and for an Adverse Inference*, AP ECF No. 104; *The City of Atlantic City's Statement of Additional Undisputed Material Facts in Support of Its Opposition to Defendant Drummon's Motion for Summary Judgment and the City's Cross-Motion for Summary Judgment*, AP ECF No. 104-1.

[17] *Memorandum Decision and Order Granting Defendant's Motion for Summary Judgment and Denying Plaintiff's Cross-Motion for Summary Judgment and Motion for an Adverse Inference*, AP ECF No. 114.

**The Motion**

On December 27, 2023, Drummon filed the Motion to dismiss Counts Four and Five of the Complaint. In support of the Motion, Drummon asserts that, on July 9, 2019, he "filed an amended schedule and corrected Form 106 A/B and Schedule A/B: Property." Motion at 2. That amended schedule "reflects Drummon as the sole owner of (among ownership interest in other entities) Taipan Holdings, LLC, with the value of that ownership identified as $0.00." *Id.* In support of the amendment, Drummon explains:

> Drummon's ownership interest with nine other partners in Zemurray Street Capital, LLC, was through his ownership of Taipan Holdings LLC, which was the owner of Zemurray Street Capital, LLC, with nine other partners. Therefore, Drummon's corrected schedule of property identified his ownership of Taipan Holdings, LLC, rather than [ownership] of Zemurray Street Capital, LLC, with nine other partners.

*Id.* He maintains that the Court should grant the Motion and dismiss Counts Four and Five because the filing of the Amended Schedules and corrected Form 106A/B and Schedule A/B: Property "renders moot the City's allegations in causes of action four and five of the [Complaint]." *Id*.

On April 7, 2014, the City deposed Drummon in the District Court Action. "He testified that at the time of deposition, he had 50% ownership of Zemurray through his ownership of Taipan Holdings, LLC, and that the Lantana Trust owned the other 50%. (Drummon Dep. at 8:7–23.)" District Court Order, 2017 WL 6638203, at *6; *see also id*., at *1 (finding that "[s]ince the time of the events at issue, W. Wesley Drummon has had a 50% ownership interest in Taipan Holdings, LLC, which itself has a 50% controlling interest in Zemurray . (Drummon Dep. 8:12–14.) The Lantana Trust owns the other 50% of Zemurray. *Id.*").

It is undisputed that neither Zemurray nor Taipan has any value. At the Hearing, Drummon's counsel did not argue that the filing of the Amended Schedules, per se, moots the

8

City's claims under sections 727(a)(4)(A) or (B).[18] Rather, he argued that the City has not stated claims for relief against Drummon under those provisions because (i) the record is clear that at all relevant times, the City has been in possession of the correct information that Drummon misstated in the Schedules; (ii) Zemurray and Taipan have no assets or any value, and (iii) no third party could rely to their detriment on the information that Drummon included in the Schedules.

**The City's Opposition to the Motion**

On January 23, 2024, the City filed its Opposition to the Motion. In broad strokes, the City contends that the Court must deny the Motion because the Complaint alleges facts that, if true, state claims for relief against Drummon under section 727(a)(4)(A) and (B) of the Bankruptcy Code. Opposition at 7-10. Moreover, it asserts that the Answer is "replete with denials" and, for that reason, this "is absolutely not a case where there are no facts in dispute leaving the Court to decide only matters of law." *Id.* at 5. The City also contends that the fact that Drummon filed the Amended Schedules after the City commenced this action provides no support for the Motion. Finally, the City argues that the fact that Zemurray and Taipan have no value is no bar to granting relief under section 727(a)(4)(A).

<u>**Legal Principles**</u>

Rule 12(c) "provides that 'a party may move for judgment on the pleadings' anytime '[a]fter the pleadings are closed—but early enough not to delay trial.'" *In re Vivendi Universal, S.A., Sec. Litig.*, 842 F. Supp. 2d 522, 526 (S.D.N.Y. 2012) (quoting Fed. R. Civ. P. 12(c)). "Judgment on the pleadings 'is appropriate where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings.'" *VCG*

---

[18] The City contends that Drummon's filing of the Amended Schedules does not moot the City's claims under Counts Four and Five. Opposition at 9. Because Drummon has clarified that he is not pursuing a mootness argument, the Court need not and does not reach the issue.

9

*Special Opportunities Master Fund Ltd. v. Citibank, N.A.*, 594 F. Supp. 2d 334, 339 (S.D.N.Y. 2008) (quoting *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir. 1988)). Thus, "[t]he motion for a judgment on the pleadings only has utility when all material allegations of fact are admitted or not controverted in the pleadings and only questions of law remain to be decided by the district court." *Allstate Ins. Co. v. Vitality Physicians Grp. Practice P.C.*, 537 F. Supp. 3d 533, 545 (S.D.N.Y. 2021) (quoting 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1367 (3d ed. 2021)).

In deciding a Rule 12(c) motion, courts apply the standard applicable to a motion under Rule 12(b)(6). *See Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010); *Lewis v. GMAC Mortgage Co., LLC (In re Residential Cap., LLC)*, 2012 WL 5386151, at *3 (Bankr. S.D.N.Y. Nov. 1, 2012). When considering a motion to dismiss under either Rule 12(b)(6) or Rule 12(c), a court must accept the facts alleged in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *Koppel v. 4987 Corp.*, 167 F.3d 125, 133 (2d Cir. 1999). However, where "a plaintiff's conclusory allegations are clearly contradicted by documentary evidence incorporated into the pleadings by reference . . . the court is not required to accept them." *In re Musicland Holding Corp.*, 374 B.R. 113, 119–20 (Bankr. S.D.N.Y. 2007). On a Rule 12(c) motion, the court may consider "the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011). A court may look beyond the four corners of the complaint and consider the exhibits, statements, and documents that are incorporated by reference, and issues of which the Court can take judicial notice. *Life Prod. Clearing, LLC v. Angel*, 530 F. Supp. 2d 646, 652 (S.D.N.Y. 2008). In rendering its decision, a court should consider "the full factual picture presented by the complaint, the particular cause of

10

action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *L-7 Designs, Inc.*, 647 F.3d at 430.

## Analysis

**Count Four**

In Count Four of the Complaint, the City seeks a judgment pursuant to section 727(a)(4)(A) of the Bankruptcy Code denying the Debtor a discharge in bankruptcy. The gravamen of the Count is that the Debtor knowingly, fraudulently, and intentionally made a false oath or account by failing to disclose his property interests in Taipan. Complaint ¶¶ 124–27.

Under section 727(a)(4)(A), the court may deny a debtor a discharge in bankruptcy if "the debtor knowingly and fraudulently, in or in connection with the case . . . made a false oath or account." 11 U.S.C. § 727(a)(4)(A). To state a claim for relief under section 727(a)(4)(A), the City must allege facts demonstrating that Drummon (i) made a statement under oath; (ii) the statement was false; (iii) he knew the statement was false; (iv) he made the statement with fraudulent intent; and (v) the statement related materially to the bankruptcy case. *Piazza v. Bruno (In re Bruno)*, No. 23-01001, 2023 WL 3139919, at *7 (Bankr S.D.N.Y. Apr. 27, 2023) (citing *Baron v. Klutchko (In re Klutchko)*, 338 B.R. 554, 567 (Bankr. S.D.N.Y. 2005)); s*ee Beer Sheva Realty Corp. v. Pongvitayapanu (In re Pongvitayapanu)*, 487 B.R. 130, 138 (Bankr. E.D.N.Y. 2013) ("To establish a claim under Section 727(a)(4)(A), a plaintiff must prove a material false oath, knowingly and fraudulently made, in connection with a bankruptcy case.").

A debtor's bankruptcy petition and the accompanying schedules constitute statements under oath for purposes of this section. *See, e.g.*, *Nof v. Gannon (In re Gannon)*, 173 B.R. 313, 320 (Bankr. S.D.N.Y. 1994); *Forrest v. Bressler (In re Bressler)*, 387 B.R. 446, 460 (Bankr.

11

S.D.N.Y. 2008). "Omissions as well as affirmative misstatements qualify as false statements for Section 727(a)(4)(A) purposes." *Adler v. Ng (In re Adler)*, 395 B.R. 827, 841 (E.D.N.Y. 2008). Under section 727(A)(4)(A), "[t]he statutory requirement of 'knowingly' mandates only that the defendant's act be voluntary and intentional—it does not require that a defendant know that the conduct violates the law." *Castillo v. Casado (In re Casado)*, 187 B.R. 446, 450 (Bankr. E.D.N.Y. 1995); *see Bordonaro v. Fido's Fences, Inc.*, 565 B.R. 222, 233 (E.D.N.Y. 2017) (holding that, based on the debtor's familiarity with his own finances, as well as his level of sophistication and education, it was reasonable to infer that when he filed his bankruptcy petition, he knew or should have known that the statements were false). "A statement is made with knowledge of its falsity if the debtor knew it to be false or if it was made with reckless disregard for its truth." *Jacob Agai, 291 Ave. P, LLC v. Antoniou (In re Antoniou)*, 515 B.R. 9, 24 (Bankr. E.D.N.Y. 2014) (quoting *In re Pongvitayapanu,* 487 B.R. at 140).

The fourth element of the statute is that the debtor made the false statement with intent to defraud. Fraudulent intent must be shown by demonstrating actual fraud, not constructive fraud. *Moreo v. Rossi (In re Moreo)*, 437 B.R. 40, 62 (E.D.N.Y. 2010). It may be established by "circumstantial evidence or by inferences drawn from a course of conduct." *In re Dubrowsky,* 244 B.R 560, 572–73 (Bankr. E.D.N.Y. 2000) (citing *Zitwer v. Kelly (In re Kelly)*, 135 B.R. 459, 462 (Bankr. S.D.N.Y. 1992)). In addition, it "can be established by a showing of actual fraud, through evidence of the traditional badges of fraud, or by the debtor's reckless disregard for the truth of his statements." *Cap. One Equip. Corp. v. Singh (In re Singh)*, 585 B.R. 330, 338–39 (Bankr. E.D.N.Y. 2018) (citing *In re Adler*, 494 B.R. at 77). However, inadvertent misrepresentations, or instances of mere carelessness or ignorance, are not actionable under the statute. *Gordon v. Tese-Milner (In re Gordon)*, 535 B.R. 531, 537 (S.D.N.Y. 2015). Courts are clear that intent under

12

section 727(a)(4)(a) "will not be found in cases of ignorance or carelessness." *Pereira v. Gardner (In re Gardner)*, 384 B.R. 654, 667 (Bankr. S.D.N.Y. 2008). In *In re Levi*, Judge Wiles explained that, in applying section 727(a)(4)(A):

> The party objecting to a discharge based on the omission of information in a sworn statement must show that the information was omitted for the specific purpose of perpetrating a fraud and not simply because the debtor was careless or failed to fully understand an attorney's instructions. . . . However, "[a] reckless disregard of both the serious nature of the information sought and the necessary attention to detail and accuracy in answering may rise to the level of fraudulent intent necessary to bar a discharge."

*Mazer-Marino v. Levi (In re Levi)*, 581 B.R. 733, 746 (Bankr. S.D.N.Y. 2017) (quoting *Field v. Irving (In re Irving)*, 27 B.R. 943, 946 (Bankr. E.D.N.Y. 1983)).

Objections to discharge based on section 727(a)(4)(A) sound in fraud and must comply with the special pleading requirements contained in Fed. R. Civ. P. 9(b).[19] *See Migoscha, S.A. v. Meffert (In re Meffert)*, 232 B.R. 71, 74 (Bankr. S.D.N.Y. 1998); *see also Hunt v. Steffensen (In re Steffensen)*, 511 B.R. 149, 160 (Bankr D. Utah 2014) ("[B]ecause one element of a § 727(a)(4) claim is fraudulent intent, [a] plaintiff's complaint must meet the particularity requirements of Rule 9(b)."). To satisfy those pleading requirements, "a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Under Rule 9(b) "the complaint must: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)). "In other words, Rule 9(b) requires that a

---

[19] Rule 9(b) is made applicable herein by Bankruptcy Rule 7009.

plaintiff set forth the who, what, when, where and how of the alleged fraud." *Labbadia v. Martin (In re Martin)*, No. 19-03001, 2019 WL 3543778, at *5 (Bankr. D. Conn. Aug. 2, 2019) (citing *U.S. ex rel. Kester v. Novartis Pharm. Corp.*, 23 F. Supp. 3d 242, 252 (S.D.N.Y. 2014)).

Finally, a statement is "material" for purposes of section 727(a)(4)(A) "simply if it is pertinent to the discovery of assets, and a 'material' matter is one bearing a relationship to the debtor's business, transactions or estate which might lead to the discovery of assets, business dealings, or the existence or disposition of the debtor's property." *In re Klutchko*, 338 B.R at 568. "[M]ateriality does not require a showing that the creditors were prejudiced by the false statement." *In re Robinson*, 506 F.2d 1184, 1188 (2d Cir. 1974).

To summarize, to state a claim under section 727(a)(4)(A), the City must allege facts demonstrating that Drummon knowingly made a false statement material to his bankruptcy case under oath with fraudulent intent. In support of the Complaint, the City alleges that Drummon held a controlling stake in Taipan, which held a 50% interest in Zemurray, Complaint ¶ 5, that Drummon signed a document as managing member of Taipan, *id.* ¶ 57, and that Drummon testified in a deposition that he had 50% ownership of Zemurray through his ownership of Taipan., *id.* ¶¶ 96–97. It also alleges that Drummon failed to disclose his ownership interest in Taipan. *Id.* ¶¶ 125–26. If true, those allegations provide direct evidence that, as of the Petition Date, Taipan was an asset that Drummon failed to disclose in the Schedules. They also evidence that Drummon knew, or should have known, that the Schedules omitted material information that might lead to the discovery of Drummon's assets. Thus, the City has alleged facts in support of the first, second, third, and fifth elements of its claim under section 727(a)(4)(A) of the Bankruptcy Code.[20]

---

[20] Drummon concedes that he should have disclosed Taipan on his Schedules. Drummon argues that it would have been impossible for him to defraud anyone by omitting his ownership of a worthless holding company, and the City

14

To satisfy the fourth element of its claim, the City must allege facts demonstrating that in omitting Taipan from the Schedules, Drummon acted either with fraudulent intent or with reckless disregard for the accuracy of the Schedules. *See In re Levi*, 581 B.R. at 746; *In re Gordon*, 535 B.R. at 537; *In re Gardner*, 384 B.R. at 667. The City alleges facts supporting its assertion that Drummon "made a false oath and failed to properly disclose his assets" by "fail[ing] to list his ownership interest in Taipan." Complaint ¶¶ 125–26. The City does not assert that Drummon acted recklessly in failing to disclose his interest in Taipan. Rather, it alleges that Drummon did so "fraudulently." *Id.* ¶ 125. To satisfy the pleading requirements under Rule 9(b), the City must set forth "the time, place, and nature of the misrepresentation . . . so that [Drummon's] intent to defraud is evident in the [C]omplaint." *In re Perez*, 173 B.R. 284, 294 (Bankr. E.D.N.Y. 1994) (citing *Ross v. Bolton*, 904 F.2d 819, 823 (2d Cir. 1990)). The City has not met that burden because it has not alleged facts that amount to either direct or circumstantial evidence of Drummon's intent to defraud his creditors by omitting Taipan from the Schedules. The City's bare assertion that Drummon acted "fraudulently" is a legal conclusion, not a factual allegation. "A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550

---

alleges no facts showing how he could have done so. *See U.S. ex rel. Kester*, 23 F. Supp. 3d at 252. While the City relies on *Bailey* for the principle that debtors "have an absolute duty to report whatever interests they hold in property, even if they believe their assets are worthless or unavailable to the bankruptcy estate," Opposition at 8 (quoting *Bensenville Cmty. Ctr. Union v. Bailey (In re Bailey)*, 147 B.R. 157, 163 (Bankr. N.D. Ill. 1992), it ignores the *Bailey* court's determination that omissions of worthless assets are typically immaterial. "However, while the assertion that property is worthless or exempt is not a per se defense, it is a factor in determining materiality, and several courts have found minor omissions from debtors' schedules of assets to be immaterial. *Bailey*, 147 B.R. at 163 (citing *Perniciaro v. Natale (In re Natale)*, 136 B.R. 344 (Bankr. E.D.N.Y. 1992) (debtor omitted two annuities worth an aggregate of $2,000.00); *Sprague, Thall & Albert v. Woerner (In re Woerner)*, 66 B.R. 964 (Bankr. E.D. Pa. 1986) (debtor omitted a bank account with a balance of $98.85, camera and stereo equipment, and pension plans worth about $7,000.00); *Chaudhry v. Uroskin (In re Usoskin)*, 56 B.R. 805 (Bankr. E.D.N.Y. 1985) (debtor omitted three bank accounts with an aggregate balance of $7.00). Each of the assets in the cases on which the *Bailey* court relied was worth more than Taipan and Zemurray combined. However, because the Court considers Count Four at the Rule 12(c) stage, it cannot make a factual determination relating to the materiality of the omission from the Schedules.

U.S. 554, 555 (2007)). Moreover, on a section 727(a)(4)(A) claim, the mere "parroting of statutory language in the Complaint does not satisfy the requirement of alleging fraudulent intent." *In re Natale*, 136 B.R. at 350. The City alleges no "course of conduct" or other circumstances from which it could fairly be inferred that Drummon intended to defraud the City. *In re Dubrowsky*, 244 B.R at 572–73.[21] The City has not alleged any facts showing that Drummon omitted his interest in Taipan "for the specific purpose of perpetrating a fraud." *In re Levi*, 581 B.R. at 746. Accordingly, the City has failed to "allege facts that give rise to a strong inference of fraudulent intent." *Shields v. Citytrust Bancorp*, 25 F.3d 1124, 1128–29 (2d Cir. 1994). The Court finds that the City has not adequately alleged the fourth element of its claim under section 727(a)(4)(A). *See In re Venticinque*, 643 B.R. 708, 739–40 (Bankr. E.D.N.Y. 2022). Accordingly, the City fails to state a claim for relief against Drummon under Count Four of the Complaint.

**Count Five**

Under section 727(a)(4)(B) of the Bankruptcy Code, a bankruptcy court will deny a debtor its discharge in bankruptcy where "the debtor knowingly and fraudulently, in or in connection with the case . . . presented or used a false claim." 11 U.S.C. § 727(a)(4)(B). To state a claim for relief under section 727(a)(4)(B), a plaintiff must allege facts demonstrating that the debtor (i) knowingly and fraudulently, (ii) presented or used a false claim, (iii) in or in connection with the debtor's own case. 6 Collier on Bankruptcy ¶ 727.05.

This section is "sparsely used." *In re Dranichak*, No. 10-80059, 2012 WL 2343700, at *10 (Bankr. N.D.N.Y. June 20, 2012). Nonetheless, the case law is clear that the term "claim," as used in the statute, "generally refers to 'bankruptcy claims' as defined in 11 U.S.C. § 101(5) (i.e., rights

---

[21] While the City relies on *Dubrowsky* for the proposition that failure to list a property interest in a business on a schedule violates section 727, it ignores the fact that that omission was only one of seven factors in a course of conduct that the *Dubrowsky* court used to determine liability. *Id.*; *see* Opposition at 8.

16

to payments) rather than assertions, representations, and statements.'" *Crowder v. Wilbur (In re Wilbur)*, 574 B.R. 782, 798 (Bankr. N.D. Ga. 2017) (quoting *Jackson v. Jackson (In re Jackson)*, 548 B.R. 353, 385 (Bankr. N.D. Ga. 2016) (collecting cases)); *see Garcia v. Garcia (In re Garcia)*, 168 B.R. 403, 407 (D. Ariz. 1994) ("The term 'claim' as used in the Bankruptcy Code, however, means a 'right to payment' or a 'right to an equitable remedy for breach of performance if such breach gives rise to payment.'" (quoting 11 U.S.C. § 101(5))). Accordingly, "[t]o deny a debtor's discharge under Section 727(a)(4)(B), the debtor must have presented or used an inflated or fictitious claim in a bankruptcy case, with intent to defraud." *In re Gollomp*, 198 B.R. 433, 439 (S.D.N.Y. 1996) (citations omitted); *see also Scheidelman v. Henderson (In re Henderson)*, 423 B.R 598, 619 (Bankr. N.D.N.Y. 2010) ("[C]ourts that have considered objections to discharge for presenting a false claim have required the plaintiff to prove that the debtor presented or used an inflated or fictitious claim. Such cases generally involve the scheduling of non-existent debts, the scheduling of inflated debts, or the filing by the debtor of a false proof of claim.").

In Count Five, the City does not complain that Drummon scheduled non-existent or inflated debts, or filed a false proof of claim. Rather it asserts that "in failing to disclose substantial interests and assets of the estate, [Drummon] knowingly and fraudulently, in connection with the case, presented or used a false claim." Complaint ¶ 129. Accordingly, the City uses the term "claim" only in the colloquial sense, as a factual representation—not as bankruptcy claim within the meaning of section 101(5). Therefore, Count Five fails to state a claim for relief against Drummon. *See In re Jackson*, 548 B.R. at 385; *In re Garcia*, 168 B.R. at 407.[22]

---

[22] The City contends only generally that, to warrant denial of discharge under section 727(a)(4)(B), "the debtor must have presented or used an inflated or fictitious claim in a bankruptcy case, with intent to defraud." Opposition at 10 (citing *In re Natale*, 136 B.R. at 350 (Bankr. E.D.N.Y. 1992) (dismissing legal claims under sections 727(a)(4)(A) and 727(a)(4)(B) for failing to allege intent to defraud); *Barr v. Overmyer (In re Overmeyer)*, 121 B.R. 272, 282 (Bankr. S.D.N.Y. 1990) (denying summary judgment on a legal claim under section 727(a)(4)(B) because the filing

17

## Conclusion

Based on the foregoing, the Court grants the Motion and dismisses Counts Four and Five of the Complaint.

IT IS SO ORDERED.

Dated: New York, New York
February 14, 2024

/s/ *James L. Garrity, Jr.*
Hon. James L. Garrity, Jr.
U.S. Bankruptcy Judge

---

of claims held by one of the debtor's corporations in his own bankruptcy case did not "rise to the level of knowing or fraudulent conduct" solely because of the debtor's ownership interest, and instead granting summary judgment on other grounds). The City misplaces its reliance on those cases.

In *In re Natale*, the court dismissed causes of action under sections 727(a)(4)(A) and 727(a)(4)(B) for the threshold reason that the plaintiff failed to sufficiently allege fraudulent intent. In that case, as relevant, a plaintiff filed an adversary complaint that did not clearly specify its statutory basis, and the court inferred "from the parroting of statutory language in the Complaint, that Plaintiff is objecting to the Debtor's discharge pursuant to 11 U.S.C. § 727(a)(4)(A)-(B)." *In re Natale*, 136 B.R. at 347. The court dismissed any cause of action under section 727(a)(4)(A) or (B) on the grounds that (i) most of the plaintiff's allegations "do not even assert that the statements made by the Debtor were false," *id.* at 349, (ii) that the debtor's failure to list two annuities and an overstatement of his monthly rent did not constitute a section 727(a)(4)(A) claim because he could have "forgotten about the annuities or thought, quite innocently, that because of their *de minimis* value he did not have to list them," *id.* at 350, and he may have been confused about his rent; and (iii) the complaint failed to allege intent to defraud, which is an essential element of both causes of action, *id. In re Natale* does not support the City's argument with respect to Count Five because, just like the plaintiff in *In re Natale*, the City has not alleged intent with respect to Count Five. *Id.* As that court held, the mere "parroting of statutory language in the Complaint does not satisfy the requirement of alleging fraudulent intent." *Id.*

Even more salient, in *In re Overmeyer*, the court specifically dealt with a challenge to the validity of a proof of claim—not a "claim" in the sense of a fraudulent statement. *In re Overmeyer*, 121 B.R. at 282. In that case, as relevant, the individual debtor listed on his schedules the claims of at least 25 corporations over which he had control. *Id.* The debtor was found to have such pervasive control over these corporations that he should be personally liable for their obligations. *Id.* Nonetheless, this personal liability did not preclude the debtor from listing them on his schedules because "simply attempting to preserve his right to a possible discharge on claims of any of these 25 corporations" did not "rise to the level of knowing or fraudulent conduct." *Id. In re Overmeyer* is clearly distinguishable because it concerned actual bankruptcy claims propounded by a debtor. *Id.* Unlike *In re Overmeyer*, Drummon did not assert a bankruptcy claim, as required by section 727(a)(4)(B) to state a claim.